UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MARKETING DEVELOPMENTS, LTD,

           Plaintiff,

       - against -

GENESIS IMPORT AND EXPORT, INC.
and WAYNE SWABY,

           Defendants.
--------------------------------------------------------X

**R E P O R T  AND**
**RECOMMENDATION**

08 CV 3168 (CBA)

On August 5, 2008, plaintiff Marketing Developments, Ltd. ("Marketing Developments")
filed this action against defendants Genesis Import and Export, Inc. ("Genesis") and Wayne
Swaby, alleging various claims of breach of contract and fraud arising from defendants' failure to
make payments on plaintiff's shipments of produce from Jamaica to New York. Despite proper
service of the Summons and Complaint, defendants failed to appear in the action. On February
23, 2009, plaintiff moved for default, which was entered by the Clerk of Court on February 27,
2009. By Order dated March 23, 2009, the Honorable Carol B. Amon, United States District
Judge, referred the matter to the undersigned to determine whether entry of judgment is
appropriate, and to conduct an inquest on damages.

For the reasons set forth below, it is respectfully recommended that plaintiff be awarded
$119,100.87 in unpaid invoices, plus pre-judgment interest calculated at 9% per annum until
entry of judgment, and $505.00 in costs. The pre-judgment interest will begin accruing in
December 2006 on the principal amount awarded of $101,874.57, and April 1, 2007 for the
principal amount awarded of $17,226.30. It is further recommended that plaintiff's request for

punitive damages be denied, and that post-judgment interest be awarded in accordance with 28 U.S.C. § 1961.

## FACTUAL BACKGROUND

Plaintiff, a corporation doing business under the name Marketing Developments Ltd., is and has been engaged in the business of exporting produce from Jamaica to the United States and other countries since 1984. (Compl.[1] ¶¶ 1, 5). Defendant Genesis is a corporation doing business in Brooklyn, New York under the name Genesis Import and Export, Inc.; defendant Wayne Swaby is its principal. (Id. ¶¶ 2-5). Between October 2005 and January 2007, defendants placed 33 orders for, and received shipments of, produce from plaintiff totaling $270,369.02[2] in charges. These charges represent Marketing Developments' costs for transporting the produce and the price of produce. (Pl.'s Aff.[3] Ex. 1). To date, plaintiff has received $150,968.15 in payment, plus an additional $300 deposited into plaintiff's bank account by defendant Swaby in April 2008. (Compl. n.1). Defendants ceased making payments in December 2006. (Id. ¶ 5). Taking into account the amounts paid, plaintiff is still owed $119,100.87 in unpaid invoices.

Plaintiff seeks $296,505.68 in compensatory damages, which includes the principal amount owed by defendants, calculated by plaintiff to be $119,100.87, plus $88,072.31 for taxes

---

[1]Citations to "Compl." refer to plaintiff's Complaint, filed in this Court on August 5, 2008.

[2]The Court's calculations are based on what appear to be internal balance sheets submitted by plaintiff with the Complaint on August 5, 2008 as Exhibit 1, and again with the second motion for default submitted on February 24, 2009.

[3]Citations to "Pl's. Aff." refer to the affirmation of Sacha A. Comrie, Esq., dated August 14, 2009, which was submitted in support of plaintiff's request for damages.

assessed against plaintiff by the Government of Jamaica that plaintiff attributes to the unpaid

invoices (Dellop Aff.[4]), and $89,332.50 in attorney's fees and costs. In addition, plaintiff seeks

interest on the damages, and $1,000,000 in punitive damages. (Pl's. Aff. at 1).


## DISCUSSION

A. Default Judgment

   1) Standards

Rule 55(a) of the Federal Rules of Civil Procedure provides: "[w]hen a party against

whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as

provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall

enter the party's default." Fed. R. Civ. P. 55(a). As a threshold issue, Rule 55 sets forth a two-

step process that first requires the entry of a default through a notation on the record that the

party has defaulted, and then entry of a default judgment, which is the final action in the case.

See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). The court clerk

automatically enters the default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure,

by notation of the party's default on the clerk's record of the case. See id.

After a default has been entered against a party, if that party fails to appear or otherwise

move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. See

Fed. R. Civ. P. 55(b). Although an application for entry of default should be made before a

motion for entry of default judgment, courts will generally excuse a failure to obtain entry of

---

   [4]Citations to "Dellop Aff." refer to the affidavit of Tekka Dellop, dated August 14, 2009, which is attached to plaintiff's Affirmation in Support of Damages as "Exhibit B."

default before the motion for default judgment is made. See, e.g., Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *1-2 (S.D.N.Y. Oct. 15, 1992). Here, plaintiff submitted a request for both entry of default and default judgment on February 23, 2009. The clerk of court entered a default on February 27, 2009.

In determining whether a default judgment should enter, courts have cautioned that a default judgment is an extreme remedy that should only be granted as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and doubts should be resolved in favor of the defaulting party. Id. Accordingly, just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The court possesses significant discretion and may consider a number of factors in deciding whether or not to grant a default judgment, including whether the grounds for default are clearly established, and the amount of money potentially involved – the more money involved, the less justification for entering the default judgment. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2. Additionally, a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff

4

has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); 10A Charles Alan Wright et al., Federal Practice and Procedure, §§ 2685, 2688, at 32-38, 57-63 (3d ed. 1998).

## B. Plaintiff's Claims

In its Complaint, plaintiff alleges several causes of action against defendants, including "breach of contract, breach of the covenant of good faith and fair dealing, common law fraud, intentional misrepresentation, and detrimental reliance." (Pl's. Aff. ¶ 2). When a defendant defaults, he is deemed to have admitted every well-pleaded allegation of the complaint. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995); Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986). A review of the Complaint demonstrates that it clearly sets forth facts establishing a breach of contract claim. However, as set forth below, the Complaint does not establish a separate cause of action for breach of the covenant of good faith and fair dealing, nor does it adequately allege a fraud separate from the breach of contract claim.[5]

Having reviewed the prior proceedings in the current case, this Court respectfully recommends that default judgment be entered as to plaintiff's breach of contract claim and recommends that damages be awarded.

---

[5]Plaintiff also claims intentional misrepresentation and detrimental reliance as separate causes of action. (Compl. ¶¶ 18-27). However, as these are all components necessary for stating a cause of action for fraud, the Court will treat these claims as such.

1. Breach of Contract & Breach of Covenant of Good Faith and Fair Dealing

Plaintiff bears the burden of showing a breach of contract. Logan v. Bennington College Corp., 72 F.3d 1017, 1025 (2d Cir. 1995). Under New York law, "[t]o make out a viable claim for breach of contract a 'complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)); see also Globaltex Group, Ltd. v. Trends Sportswear, Ltd., No. 09 CV 235, 2009 WL 1270002 (E.D.N.Y. May 6, 2009); Banks v. Correctional Services Corp., 475 F. Supp. 2d 189, 195 (E.D.N.Y. 2007).

The Complaint alleges that between October 2005 and January 2007, defendants placed over 60 orders for produce from plaintiff but failed to pay in full for the goods received. (Compl. ¶¶ 5-6). In support of the breach of contract claim, plaintiff has provided the Court with invoices and an internal company balance sheet demonstrating that defendants ordered and received shipments of produce dating back to August 2005. The documents demonstrate the existence of an agreement and adequate performance of the contract by the plaintiff. The documents also demonstrate that defendants began to make payments that same month, but according to the internal balance sheet, it appears that defendants ceased making payments in December 2006, in breach of shipping invoices and oral agreements. (Compl. ¶ 5; Pl's. Aff. Ex. 1).

In addition to its breach of contract claim, plaintiff alleges a cause of action for breach of the covenant of good faith and fair dealing. (Compl. ¶¶ 7-9). Under New York law, the

covenant of good faith and fair dealing is implied in every contract. Travellers Int'l A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1574 (2d Cir. 1994) (citing Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co., 30 N.Y.2d 34, 45, 281 N.E.2d 142, 144, 330 N.Y.S.2d 329, 333 (1972), cert. denied, 409 U.S. 875 (1972)); see also Century Pacific, Inc. v. Hilton Hotels Corp., 528 F. Supp. 2d 206, 235 (S.D.N.Y. 2007). However, "a damage award for lost profits cannot rest upon the breach of the implied duty of good faith and fair dealing." Travellers Int'l A.G. v. Trans World Airlines, Inc. 41 F.3d at 1576. That is because a breach of the implied duty of good faith and fair dealing "is merely a breach of the underlying contract." Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992) (quoting Geler v. Nat'l Westminster Bank USA, 770 F. Supp. 210, 215 (S.D.N.Y. 1991)).

Here, if the defendants owe plaintiff damages, it must be based on an agreement between the parties. See Geler v. Nat'l Westminster Bank USA, 770 F. Supp. at 213 (holding that "[w]hether the defendant deliberately refused to make payment, thus breaching its contract, or whether through neglect it made false statements, or whether it deliberately made false statements, the action of the plaintiffs is based upon the contract, without which they would have no claim at all"); see also Triangle Underwriters, Inc. v. Honeywell, Inc., 604 F.2d 737, 746-47 (2d Cir. 1979) (construing Brick v. Cohn-Hall-Marx Co., 276 N.Y. 259, 263-64, 11 N.E.2d 902 (1937)). Plaintiff has not demonstrated that its allegations of breach of the covenant of good faith and fair dealing are causes of action independent of the alleged breach of contract. Therefore, the Court respectfully recommends that any appropriate damages be awarded only on the basis of plaintiff's claimed breach of contract.

## 2. Fraud

Plaintiff also alleges common law fraud claims in its Complaint.[6] (Compl. ¶¶ 10-17). Specifically, plaintiff alleges that defendants represented to plaintiff that defendants would pay the invoiced amounts for fresh produce shipped. (Id. ¶ 11). Plaintiff further alleges that at the time defendants made these representations, defendants knew they were false and they had no intention of actually paying for the goods in full. (Id. ¶ 12). Plaintiff claims that it relied on the misrepresentations and that it suffered damages as a consequence. (Id. ¶¶ 13-15).

To state a cause of action for fraud based on fraudulent misrepresentations under New York law, "a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, [and] justifiable reliance by the plaintiff and resulting injury." Kaufman v. Cohen, 307 A.D.2d 113, 119, 760 N.Y.S.2d 157, 165 (1st Dep't 2003) (internal citations omitted). When pleading such a cause of action in federal court, Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading standard, requiring that "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); see also Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986); Tuscano v. Tuscano, 403 F. Supp. 2d 214, 221 (E.D.N.Y. 2005). Specifically, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)). Moreover,

---

[6]Plaintiff also claims intentional misrepresentation and detrimental reliance as separate causes of action. (Compl. ¶¶ 18-27). However, as these are all components necessary for stating a cause of action for fraud, this Court has not treated these claims as separate causes of action.

"[a]llegations of fraud cannot ordinarily be based 'upon information and belief,' except as to 'matters peculiarly within the opposing party's knowledge.'" Luce v. Edelstein, 802 F.2d at 54 n.1 (internal citation omitted).

Although "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally," Fed. R. Civ. P. 9(b); Cohen v. Koenig, 25 F.3d 1168, 1173 (2d Cir. 1994) (noting that plaintiff need not allege the requisite intent with "'great specificity'") (internal citation omitted), the "actual fraudulent statements or conduct and the fraud alleged must be stated with particularity." Chill v. Gen. Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996) (internal citations omitted). To this end, a plaintiff must allege facts that give rise to a "strong inference of fraudulent intent" by either "alleging facts to show that defendants had both motive and opportunity to commit fraud, or . . . by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994); see also Press v. Chemical Inv. Servs. Corp., 166 F.3d 529, 537-38 (2d Cir. 1999); In re Loral Space & Commc'ns Ltd. Sec. Litig., No. 01 CV 4388, 2004 WL 376442 (S.D.N.Y. Feb. 27, 2004).

The Second Circuit has held that to state a claim of fraud under New York law based on intentional misrepresentations, a plaintiff must show that: "1) the defendant made a material misrepresentation; 2) the defendant knew of its falsity; 3) the defendant possessed an intent to defraud; 4) the plaintiff reasonably relied on the misrepresentation; and 5) the plaintiff suffered damage as a result of the misrepresentation." Kaye v. Grossman, 202 F.3d 611, 614 (2d Cir. 2000) (citing Schlaifer Nance & Co. v. Estate of Andy Warhol, 119 F.3d 91, 98 (2d Cir. 1997)).

Here, plaintiff has neither specified any particular fraudulent statements, nor has plaintiff

stated when, where or by whom such statements were made. Plaintiff merely alleges that defendants fraudulently represented that they intended to pay when in fact defendants had no such intention to do so. (Compl. ¶ 12). Apart from generally complaining that defendants have not paid for certain shipments, plaintiff has not explained why the statements were fraudulent. As such, the allegations in the Complaint do not satisfy the requirements of Rule 9(b).

Additionally, plaintiff's fraud claims are insufficient to show that plaintiff reasonably relied on defendants' fraudulent representations. See Kaufman v. Cohen, 307 A.D.2d at 119, 760 N.Y.S.2d at 165. Claims of detrimental reliance must be pleaded with particularity, see ATSI Commn's, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 89 (2d Cir. 2007) (holding that allegations that are "conclusory or unsupported by factual assertions are insufficient"); Hunt v. Enzo Biochem, Inc., 530 F. Supp. 2d 580, 593 (S.D.N.Y. 2008), yet plaintiff's claims of detrimental reliance merely assert that plaintiff "relied on [defendants' promises of payment] to its detriment, by shipping goods to Defendants for a total loss of $119,100.87, together with interest and untold lost potential profits, increased costs and other damages and opportunity losses." (Compl. ¶ 27). This is insufficient to support a claim of detrimental reliance. See Geler v. Nat'l Westminster Bank USA, 770 F. Supp. 210, 213 (S.D.N.Y. 1991) (holding that even if plaintiffs' claims of misrepresentation were persuasive, and plaintiffs claimed reliance on those misrepresentations, "any such reliance could not possibly be the cause of any injury that the [the plaintiffs] suffered on account of the Bank's failure to pay them the sum due under the certificate, because the Bank could have refused, justifiably or unjustifiably, to pay the Gelers whether or not they believed the supposed misrepresentations").

Moreover, it is unclear whether the Complaint adequately alleges that defendants had the

requisite intent to defraud under New York law. The law in this Circuit is somewhat unclear whether New York law requires the plaintiff to plead an intent to defraud. Indeed, although the Second Circuit has in the past specifically required plaintiff to plead "'an intent to defraud,'" it has declined to decide whether this requirement is inconsistent with state law precedent holding that the "'plaintiff must only allege facts from which it may be inferred that the defendant was aware that its misrepresentations would be reasonably relied upon by the plaintiff, not that the defendant intended to induce the particular acts of detrimental reliance ultimately undertaken by the plaintiff.'" Lerner v. Fleet Bank, N.A., 459 F.3d at 291 n.8 (internal citation omitted).

Here, the Court finds it unnecessary to resolve this issue in addressing the motion at hand. See Blaize-Sampeur v. McDowell, 2006 WL 3903957, at *3 n.5. Not only is the plaintiff's fraud claim deficient in other respects (see discussion supra), but to the extent plaintiff is required to plead the element of intent, plaintiff cannot do so by merely alleging intent as it "relates to a contracting party's alleged intent to breach a contractual obligation." TVT Records v. Island Def Jam Music Grp., 412 F.3d 82, 91 (2d Cir. 2005) (quoting Caniglia v. Chicago Trib.-NY Syndicate, Inc., 204 A.D.2d 233, 234, 612 N.Y.S.2d 146, 147 (1st Dep't 1994)).

Finally, the Complaint does not sufficiently state a claim for fraud because the fraud claim arises out of the same facts as the breach of contract claim with the sole additional allegation that the defendants never intended to fulfill its express contractual obligations without any additional allegations of collateral or extraneous misrepresentations inducing the plaintiff to enter into the concerned contract. PI, Inc. v. Quality Prods., Inc., 907 F. Supp. 752, 761 (S.D.N.Y. 1995); see also D.S. Am. (East), Inc. v. Chromagrafx Imaging Sys., Inc., 873 F. Supp. 786, 795-96 (E.D.N.Y. 1995) (finding that defendant's counterclaim alleging fraudulent

inducement amounted to an allegation of "nothing more than breaches of promises of future performance that constitute the express terms of the contract, not promises collateral or extraneous to the contract"); GSGSB, Inc. v. New York Yankees, 862 F. Supp. 1160, 1177 (S.D.N.Y. 1994) (holding that plaintiff failed to plead fraud with particularity because "breach of promise sounds in contract, not fraud"); Geler v. Nat'l Westminster Bank USA, 770 F. Supp. 210, 213 (S.D.N.Y. 1991) (denying plaintiffs' motion to amend their complaint to include allegations of fraud as nothing more than dressing "a contract claim in a [tort] suit of clothes"). Indeed, under New York law, "where a fraud claim arises out of the same facts as a breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." Telecom Intern. Am., Ltd. v. AT&T Corp., 280 F.3d 175, 196 (2d Cir. 2001) (quoting Sudul v. Comp. Outsourcing Servs., 868 F. Supp. 59, 62 (S.D.N.Y. 1994)); see also Four Star Capital Corp. v. Nynex Corp., 183 F.R.D. 91, 109 (S.D.N.Y. 1997).

In this case, the facts presented in the Complaint to support plaintiff's breach of contract claim are reiterated in support of plaintiff's claims of common law fraud, intentional misrepresentation, and detrimental reliance, supplemented only by cursory allegations that defendants entered into the contract with "no intention of actually paying Plaintiff in full" (Compl. ¶ 12), with the "intent to induce reliance by Plaintiff on said misrepresentations" (id. ¶ 13), and with the knowledge that defendants' representations were "false." (Id. ¶ 20). These supplemental allegations are plainly insufficient because the plaintiff merely supports its fraud claim with the same facts as the breach of contract claim "with the addition only of an allegation

that defendant never intended to perform the precise promises spelled out in the contract between the parties." Telecom Intern. Am., Ltd. v. AT&T Corp., 280 F.3d at 196. Accordingly, since the alleged fraud at issue is not based on a misrepresentation that is extraneous or collateral to the contract, the Court respectfully recommends that plaintiff's claim for damages based on common law fraud, including plaintiff's claims of intentional misrepresentation and detrimental reliance, be denied, and that damages be assessed based on plaintiff's breach of contract claim.

## C. Damages

### 1. Default Judgment Damages

Having reviewed the prior proceedings in this case, the Court respectfully recommends that a default judgment be entered in favor of plaintiff. It is beyond dispute that the defendants are in default. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (holding that "[the defendant's] default is crystal clear - - it does not even oppose this motion"). Defendants neither responded to the Complaint or plaintiff's motion for default judgment, nor have they responded to this Court's Order permitting both parties to submit papers in connection with this inquest proceeding. In fact, defendants have failed to appear at all in this case. Thus, nothing before this Court disputes the veracity of plaintiff's claim that in breach of various oral agreements, defendants failed to make full payment on shipments of produce from plaintiff in Jamaica to defendant Genesis in New York.

Given the numerous opportunities afforded defendants and their apparent lack of interest in participating in these proceedings, there is no compelling reason to delay further. Accordingly, it is respectfully recommended that plaintiff's motion for default judgment be

granted as to plaintiff's breach of contract claims.

2. Compensatory Damages

Having determined that plaintiff has successfully stated a claim for breach of contract, the Court turns to an assessment of the appropriate damages. Plaintiff seeks compensatory damages in the amount of $296,505.68, including $119,100.87 in unpaid invoices, $88,072.31 in income taxes assessed by the Government of Jamaica based on the unpaid invoices, and $89,332.50 in legal fees, plus interest on the unpaid invoices from December 2006.

In support of its claim for $119,100.87, representing the amounts owed by defendants for goods shipped and received, plaintiff has submitted the Affidavit of Tekka Dellop, Office Manager for plaintiff. According to plaintiff's Office Manager, all payments received from defendants were recorded into plaintiff's accounting software upon receipt. (Dellop Aff. ¶¶ 2-3, Ex. A). A Detailed Statement of Account was provided, showing the date of the invoice, the invoice reference number, whether the item is a sale to a client or payment received, the amount of the original invoice, and the running balance due. (Id.) Also submitted is an Aged Receivables Statement that shows the number of days that the debt was past due. (Id. ¶¶ 4-5; Ex. B). According to the Dellop Affidavit, sometimes an invoice will include freight charges when the expenses for a shipment are paid for by plaintiff; however, when defendants pay the freight charges directly no amount for freight will be added to the invoices. (Id. ¶ 6).

Based on the Affidavit of Tekka Dellop and the summary of invoices prepared from plaintiff's invoices and office records, it appears that plaintiff shipped goods to defendants on 33 occasions between October 8, 2005 and January 4, 2007. (Dellop Aff. Ex. A). The total amount owed on these invoices was $270,396.02 from which should be deducted invoiced payments by

defendants in the amount of $150,968.15, plus $300 deposited into the plaintiff's bank account. (Id.; Compl. n.1). According to plaintiff, the last payment made by defendants was in December 2006 in the amount of $3,848.15. (Dellop Aff. ¶ 6; Ex. A).

Plaintiff has provided the Court with adequate documentation of the unpaid invoices and defendants have not contested these figures. Accordingly, based on the documentation submitted by plaintiff, the Court respectfully recommends that plaintiff be awarded $119,100.87 in compensatory damages for unpaid invoices owed by the defendants.

    3. Income Taxes

Plaintiff also seeks recovery of income taxes assessed by the Government of Jamaica. In support for its request for reimbursement of monies paid to the Government of Jamaica as taxes, plaintiff has submitted the Affidavit of Samuel Bernard, accountant for plaintiff, dated August 14, 2009. According to Mr. Bernard, plaintiff sought to write off JA $24,500,000 in bad debt resulting from two non-performing customers. (Bernard Aff. ¶ 2). Of this amount, approximately 43% is attributable to defendants, totalling JA $10,440,000. (Id.) Mr. Bernard represents that if plaintiff had collected the amounts owed from two non-paying customers, including the defendants, plaintiff would have been able to omit the bad debts from its books and pay income tax on income actually received. (Bernard Aff. ¶ 3). He further represents that the amount that would have been due if plaintiff was able to write off this bad debt is JA $363,558. (Id.)

However, because the defendants did not pay, Mr. Bernard represents that the Government of Jamaica conducted a tax audit and assessed the plaintiff JA$7,750,362.94 in taxes, an amount that presumably takes into account the value of the unpaid invoices. (Id.)

Plaintiff claims that Jamaican law requires the company to have a valid Tax Compliance Certificate to import goods into Jamaica; without that Certificate, there is an additional General Consumption Tax added to imported goods, including the packaging that it purchases from abroad. (Id. ¶ 4). Plaintiff asserts that its ability to conduct trade has been "gravely affected" by this tax assessment and they seek reimbursement from plaintiff in the amount of $88,072.31, which represents 43% of the JA$7,750,362.94 assessed by the Jamaican authorities.

Although plaintiff has submitted a supplemental affidavit explaining the basis for the tax assessment and how the amount was calculated, plaintiff has not provided any legal authority that would support such an award of taxes to plaintiff. Presumably, if the defendants had paid for all of plaintiff's shipments, the defendants would not be responsible for paying those taxes. Instead, plaintiff would still owe the Government of Jamaica income taxes on the goods sold and amounts received. Thus, it is not apparent that the plaintiff ought to be allowed to recover income taxes plaintiff otherwise would have had to pay if the contract was fulfilled.

This comports with the general rule of damages in a breach of contract action, whereby the court will award "the amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract." Adams v. Lindblad Travel, Inc., 730 F.2d 89, 92 (2d Cir. 1984) (citing Perma Research & Dev. v. Singer Co., 542 F.2d 111, 116 (2d Cir.), cert. denied, 429 U.S. 987, 97 S. Ct. 507, 50 L.Ed.2d 598 (1976). See Trans Atlantic Airlines, Inc. v. Kambi Travel Int'l, No. 05 CV 2552, 2006 WL 1317024 (S.D.N.Y. May 12, 2006); DVCi Techs., Inc. v. Timesquaremedia.com, Inc., No. 00 CV 0207, 2000 WL 33159189 (S.D.N.Y. Nov. 29, 2000). Given that the Court has recommended an award in damages equal to the amounts defendants would have paid had they complied with the parties' agreement, plus

interest,[7] the Court finds no basis on which to also award an amount equal to the taxes assessed against plaintiff for these bad debts.

### 3. Punitive Damages

Plaintiff also seeks punitive damages in the amount of $1,000,000.[8] (Pl's. Aff.). As a general matter, a plaintiff may be awarded punitive damages where defendant has engaged in "gross, wanton, or willful fraud or other morally culpable conduct to an extreme degree." H & R Indus., Inc. v. Kirshner, 899 F. Supp. 995, 1012 (E.D.N.Y. 1995) (quoting Smith v. Lightning Bolt Prods., Inc., 861 F.2d at 371 (2d Cir. 1988)) (internal quotation omitted). Punitive damages may also be appropriate where the parties' relationship was fiduciary or confidential. H & R Indus., Inc. v. Kirshner, 899 F. Supp. at 1012.

Although "punitive damages are not available for a simple breach of contract," Smith v. Lightning Bolt Prods., Inc., 861 F.2d at 371 (citing, *inter alia*, Garrity v. Lyle Stuart, Inc., 40 N.Y.2d 354, 358, 386, 353 N.E.2d 793, 795 (1976)), punitive damages nonetheless may be available in certain breach of contract actions "if the plaintiff demonstrates (1) that the defendant's conduct is 'actionable as an independent tort; (2) the tortious conduct must be of [an] egregious nature; (3) the egregious conduct must be directed to plaintiff; and (4) [the defendant's conduct] was " part of a pattern directed at the public generally.'" New York Marine & Gen. Ins.

---

[7] See discussion *infra* at 19-20.

[8] The Complaint states that plaintiff seeks punitive damages in the amount of $250,000 (Compl. ¶ 27(c)). However, plaintiff's affirmation in support of damages, which seeks punitive damages in the amount of $1,000,000 is the more recent of plaintiff's documentation. Thus, the Court has considered plaintiff's request for the latter figure.

Co. v. Tradeline (L.L.C.), 266 F.3d 112, 130 (2d Cir. 2001) (quoting New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 316, 662 N.E.2d 763, 767 (1995)); see also TVT Records v. Island Def Jam Music Grp., 412 F.3d at 92-93 (resolving a split in the lower courts by holding that the "public aim" prong is a mandatory element of the test).

As such, "punitive damages are not available in a breach of contract case, in the absence of a tort such as fraud or breach of fiduciary duty." Geler v. Nat'l Westminster Bank USA, 770 F. Supp. 210, 215 (S.D.N.Y. 1991); see also Brink's Inc. v. City of New York, 717 F.2d 700 (2d Cir. 1983). Such cases of non-tortious breach of contract involve only a private wrong and do not harm the rights of the general public. Durham Indus., Inc. v. North River Ins. Co., 673 F.2d 37, 41 (2d Cir. 1982); see Parke-Hayden, Inc. v. Loews Theatre Mgmt. Corp., 789 F. Supp. 1257, 1267 (S.D.N.Y. 1992) (opining that "New York courts, the Second Circuit and courts within this district are virtually unanimous that punitive damages may not be awarded in breach of contract cases, unless the wrong is aimed at the public generally"); Airlines Reporting Corp. v. Aero Voyagers, Inc., 721 F. Supp. 579, 586 (S.D.N.Y. 1989) (holding that plaintiff's claim for punitive damages for breach of contract is in fact stated on the basis of breach of fiduciary duty, since "New York law recognizes a breach of fiduciary duty as an exception to the general rule against punitive damages for breach of contract").[9]

Here, plaintiff has failed to allege facts sufficient to satisfy the requirements for an award of punitive damages. Plaintiff and defendants were not engaged in a fiduciary or confidential

---

[9]But see Roy Exp. Co. v. Columbia Broad. Sys., 672 F.2d 1095, 1106 (2d Cir.), cert. denied, 459 U.S. 826, 103 (1982) (holding that under New York law, punitive damages are available "where a wrong is aggravated by recklessness or willfulness, . . . whether or not directed against the public generally"); see also Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 509 (2d Cir. 1991).

relationship. While defendants' breach of contract may have been reprehensible, there are no facts alleged to support the conclusion that defendants were engaged in a large-scale scheme to defraud the public, nor does the conduct rise to the level of moral culpability necessary to justify punitive damages. Accordingly, this Court respectfully recommends that plaintiff's claim for punitive damages be denied.

### 4. Interest

Plaintiff also seeks statutory interest on the damages awarded from December 2006. (Pl's. Aff. ¶ 4(i)). Under New York law, "'[a] plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right.'" TMS Entm't Ltd. v. Madison Green Entm't Sales, Inc., No. 03 Civ. 0517, 2005 WL 2063786, at *3 (S.D.N.Y. Aug. 16, 2005) (quoting United States Naval Inst. v. Charter Commc'ns, Inc., 936 F.2d 692, 698 (2d Cir. 1991)); see also N.Y. C.P.L.R. §§ 5001-5004. The prevailing party is entitled under New York law to prejudgment interest from the date the injury occurred until the date of the final judgment. See C.P.L.R. §§ 5001-5002; Schipani v. McLeod, 541 F.3d 158, 164-65 (2d Cir. 2008); U.S. Naval Inst. v. Charter Commc'ns, Inc., 936 F.2d 692, 698 (2d Cir. 1991). The statutory rate for such prejudgment interest is 9 percent per annum. See C.P.L.R. § 5004; Mars Elecs. v. U.S.A. Direct, 28 F. Supp. 2d 91 (E.D.N.Y. 1998); see also Hunter TBA, Inc. v. Triple V Sales, 250 F.R.D. 116 (E.D.N.Y. 2008).

Under prevailing law, the plaintiff in this case is entitled to prejudgment interest at the statutory rate of 9 percent per annum. Although the Court is recommending an award of $119,100.87 in compensatory damages, this figure includes charges that occurred after December

2006, the date on which plaintiff asks for prejudgment interest to start accruing. The Court

calculates that the defendants owed the plaintiff $101,874.57 at the end of December 2006.

(Dellop Aff. Ex. A). Accordingly, based on the principal amount awarded of $101,874.57 for the

period ending December 2006, the Court respectfully recommends that prejudgment interest be

awarded to plaintiff at 9 percent per annum from December 2006, the date requested by plaintiff,

to the date judgment is entered. Additionally, based on the principal amount awarded of

$17.226.30 for the period running from January 1, 2007 until April 1, 2007, the Court

respectfully recommends that prejudgment interest be awarded to plaintiff at 9 percent per annum

from April 1, 2007, the date of plaintiff's final invoice to defendants.

Pursuant to 28 U.S.C. § 1961(a), litigants are also entitled to post-judgment interest on

money awards issued by a district court. Schipani v. McLeod, 541 F.3d at 165. Post-judgment

interest is established by federal statutory authority and its accrual is "calculated from the date of

the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury

yield, as published by the Board of Governors of the Federal Reserve System, for the calendar

week preceding the date of the judgment." 28 U.S.C. § 1961(a); see also Int'l Consulting Servs.

v. Cheap Tickets, Inc., No. 01 CV 4768, 2007 U.S. Dist. LEXIS 71689 at *30 (E.D.N.Y. Sept.

12, 2007). Since Section 1961(a) does not allow "the exercise of judicial discretion in its

application," Akermanis v. Sea-Land Serv., Inc., 521 F. Supp. 44, 57 (S.D.N.Y. 1981), rev'd on

other grounds, 688 F.2d 898 (2d Cir. 1982), cert. denied, 461 U.S. 927 (1983), plaintiff is entitled

to post-judgment interest at the statutory rate prescribed by 28 U.S.C. § 1961, calculated from

the date the district court enters judgment.

5. Attorney's Fees

Plaintiff also seeks an award of attorney's fees incurred in connection with this action. (Pl's. Aff. ¶ 4). Plaintiff seeks attorney's fees in the amount of $85,312.50, representing services that plaintiff's counsel, Sacha A. Comrie, Esq. of Comrie & Associates, LLC, performed in connection with this case from the inception of this litigation through the preparation of the damages inquest. (Pl's. Aff. Ex. C).

Under New York law, "attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." Hooper Assocs., v. AGS Computers, Inc., 74 N.Y.2d 487, 491, 549 N.Y.S.2d 365, 366, 548 N.E.2d 903, 904 (1989). This rule is consistent with the American Rule for attorney's fees which requires each party to bear its own legal costs "unless an award is authorized by agreement between the parties, statute or court rule." Tevdorachvili v. Chase Manhattan Bank, 103 F. Supp. 2d 632, 644 (2000). In her supplemental affidavit dated August 14, 2009, Ms. Comrie indicates that plaintiff is seeking an award of fees "pursuant to inter alia Fed. R. Civ. P. 54 and Fed. R. Civ. P. 72(b) based on the agreement between Plaintiff and Counsel to collect fees upon the completion of this matter, or based on any judgment entered by the Court." (Comrie Supp. Aff. ¶ 4). Apart from this unsupported reference to an agreement between plaintiff and plaintiff's counsel, there is nothing in the record to indicate that defendants ever agreed to pay fees in the event of litigation. Since it is unclear on what basis plaintiff believes Ms. Comrie is entitled to reimbursement of her fees from defendants, this Court

respectfully recommends that plaintiff's request for reimbursement of attorney's fees be denied.[10]

Plaintiff also seeks reimbursement for $4,020 in costs and disbursements necessary to file the instant claim. (Pl's. Aff. Ex. C). Included in this sum are costs attributed to electronic research on Westlaw Legal Database, postage and long distance telephone charges. (Id.) However, plaintiff has neither cited any contractual provision that provides a basis for such recovery, nor has plaintiff provided any independent legal theory upon which reimbursement of these expenses should be made. Thus, this Court respectfully recommends that the claim for reimbursement of these expenses be denied.

Although not entitled to attorney's fees or business expenses, plaintiff is eligible under the Federal Rules of Civil Procedure for reimbursement of certain costs and disbursements incurred as a result of this litigation. See Fed. R. Civ. P. 54(d) ("Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorney's fees shall be allowed as of course to the prevailing party . . . ."). To that end, Section 1920 of Title 28 of the U.S. Code "enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)." Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-42 (1987), superceded by statute on other grounds; see also 28 U.S.C. § 1920; Envirosure Mgmt. Corp. v. Hydrocarbon Refining Corp., No. 88 CV 139E, 1989 WL 98773 at *2 (W.D.N.Y. Aug. 23, 1989) (employing these standards in a breach of contract

---

[10]The Court notes that even if fees were available, the amount requested ($89,332.50), and the time spent, are not supported by the complexity of this litigation. (See, e.g., Comrie Ex. C (requesting 75.5 hours for research into causes of action for debt collection, federal jurisdiction, international shipping transactions and related legal matters; 69.25 hours for drafting the Complaint, and a client affidavit; and 23.5 hours for drafting the default motion)).

default case, awarding costs "as a matter of course" under Rule 54(d), noting that CPLR § 3215(a) expressly accords a right to costs in a default case). Among the type of costs authorized by Section 1920 are fees of the clerk and marshal, fees and disbursements for printing and witnesses, and fees for the exemplification and copies of papers necessarily obtained for use in the case.

This Court has discretion within the constraints of Section 1920 to determine and award costs in this case. Following a review of plaintiff's submissions, the Court orders that defendants reimburse plaintiff in the amount of $505.00, consisting of fees for services of process and filing fees. See 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d).

## CONCLUSION

In light of defendants' default, and having considered the undisputed evidence presented in support of plaintiff's request for damages, the Court respectfully recommends that plaintiff be awarded $119,100.87 in damages for defendant's breach of contract, plus pre-judgment interest according at 9% per annum until the entry of judgment, and $505.00 in costs. The pre-judgment interest will begin accruing in December 2006 on the principal amount awarded of $101,874.57, and April 1, 2007 for the principal amount awarded of $17,226.30. It is further recommended that plaintiff's request for punitive damages be denied, and that post-judgment interest be awarded in accordance with 28 U.S.C. § 1961.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.


**SO ORDERED**:

Dated: Brooklyn, New York
September 30, 2009

Cheryl L. Pollak
United States Magistrate Judge